

United States District Court
District of Connecticut

| | | |
|---|---|---|
| ROBERT GAGNON, ET UX. | : | CIVIL ACTION |
| | : | NO. 3 01 CV 810 (CFD) |
| vs. | : | |
| | : | |
| THE MANITOWOC COMPANY, INC. | : | NOVEMBER 21, 2003 |

## JOINT TRIAL MEMORANDUM

### 1.  TRIAL COUNSEL

**Plaintiff:**    Gerald S. Sack, Esq.
Sack, Spector & Karsten
836 Farmington Avenue
West Hartford, CT 06119
(860) 233-8251

**Intervening Plaintiff:**

Attorney Nancy Rosenbaum
Law Offices of Nancy Rosenbaum
655 Winding Brook Drive
Glastonbury, CT 06033
(860) 633-9471

**Defendant:**    Robert G. Oliver, Esq.
Mulvey, Oliver & Gould
83 Trumbull Street
New Haven, CT  06511
(203)-624-5111

### 2.  JURISDICTION

Based on diversity, 28 U.S.C. 1332; not in dispute.

H:\WP\GSS\PLAINTIF\gagnon-k\trial\TMO2(wdefchanges).doc  1

3. **JURY/NON-JURY**

This case will be tried to a jury.

4. **NATURE OF CASE**

This is a products liability case based on the Connecticut Products Liability Act, C.G.S. §52-572m et seq. seeking damages for personal injuries sustained by plaintiff, Robert Gagnon, on February 7, 2000.  Plaintiff, June Gagnon, asserts a claim for loss of consortium.

There is also an intervening plaintiff, Capco Steel Co., which has asserted a claim for reimbursement of workers' compensation benefits paid to or on behalf of Robert Gagnon, pursuant to Connecticut General Statutes § 31-293.

The defendant denies liability and also asserts the following:

1. The accident occurred due to misuse of the crane.

2. The accident was the fault of persons (Capco and its crew including Jerry Candelmo and John Malz) over whom defendant had not control or responsibility.

3. Adequate warnings and instructions were given by Manitowoc to the persons or entities (purchaser Capco and its operators) best in position to take precautions against the potential harm.

4. Failure of the assembly crew to follow assembly instructions and heed the warnings constituted alteration or modification of the crane.

5. The plaintiff Robert Gagnon himself was at fault.

6. The purchaser (Capco) and its crew were sophisticated users.

7.     The crane was not unreasonably dangerous when assembled in accordance with the instructions and in view of the warnings provided.

8.     The crane was altered due to the failure to follow the assembly instructions.

**5.     STIPULATIONS OF FACT AND LAW:**

**FACTS:**

1.     Diversity jurisdiction pursuant to 28 U.S. 1332 is agreed to.

2.     Venue in this district is agreed to.

3.     This action is governed by the Connecticut Products Liability Act, Conn. Gen. Stat. §§52-572m through 52-572r.

4.     At all times mentioned herein, defendant, The Manitowoc Company, Inc., was engaged in the business of manufacturing, designing, assembling, marketing, and selling Manitowoc "M-250" Model Cranes, among other products.

5.     Prior to February 7, 2000, defendant Manitowoc designed, manufactured and sold a certain Manitowoc M-250 Crane, Serial Number 2501105.

6.     The crane (Shop Order 4238, S/N 2501105) was manufactured in August 1997 at Manitowoc Cranes in Manitowoc, Wisconsin. It was sold to Shawmut Equipment Co., Manchester, CT and shipped on multiple trucks in October 1997 from Manitowoc, Wisconsin to Capco Steel Corp., 33 Acorn St., Providence, RI 02903.

7.     At the time of manufacture and initial sale by defendant, the subject crane included an owner's manual for assembly of the crane at a work site. The owner's manual was

shipped with the crane to the purchaser Capco Steel Corporation and included the following

folios: (1) Folio 1375 "Gantry Raising/Lowering" 1/17/92 (revision 3/3/93); and (2) Folio 1409

"Assembly/Disassembly Guide" 9/21/92 (revision 6-20-94).

8.      On February 7, 2000, plaintiff Robert Gagnon, in his capacity as an employee of

Capco Steel Corporation, was working with fellow employees attempting to assemble the

Manitowoc Crane on a job site in New London, Connecticut.

9.      Plaintiff, Robert Gagnon's, date of birth is February 22, 1946.

10.     Plaintiff's statistical life expectancy as of November 1, 2003 is 21.9 years.

11.     As of November 19, 2003 the worker's compensation lien consisted of indemnity

payments in the amount of $117,555.88 and medical payments in the amount of $464,674.61.

Claimant continues to receive weekly indemnity payments in the amount of $595.52 for

temporary total disability so that the lien continues to grow by an additional $595.52 each week.

As of November 19, 2003, the total workers compensation lien was $582,230.49.

12.     The M 250 is a large, high capacity lattice boom crawler crane (250 metric ton

class) designed to be self-assembled on a job site.

13.     The crane was designed for transport on the highways between the job sites in

modular form using tractor trailers with each load less than maximum permitable weight, width

and height constraints imposed by state and federal law for transport on the highways.

14.    At the job site the crane is assembled from modules transported on a minimum of 10 trailers and up to approximately 17 trailers depending upon configuration and rigging and job requirements.

15.    The crane is designed to be assembled on the job site by the crane owner or user without the need for another crane to assist in assembly.

16.    The Operator's Manual was provided to the customer with the delivery of the new machine and contains the safety, instructional, assembly/disassembly, operational, service and product information prepared by Manitowoc Cranes.

17.    On February 7, 2000, Capco Steel was the steel erection subcontractor on the job site of Pfizer in New London, Connecticut.

18.  Capco was assembling the M 250.  Jerry Candelmo was the operator, John Malz was the master mechanic and a crew of iron workers including plaintiff, Robert Gagnon, was being used in the assembly of the crane.

19.    No representative of Manitowoc Cranes or from the dealer Shawmut had been requested to be present at the job site on the day of the accident on February 7, 2000, and none were.

20.    The Capco crew had completed steps 1 through 4 of Folio 1375-1 and the next step was step 5.

21.    Candelmo then raised the boom but using the boom hoist control in the cab of the crane not the remote control which operates the boom butt handling cylinder.

22.    Candelmo had raised the boom butt using the boom hoist control not the boom butt handling cylinder.

23.    The boom butt handling cylinder is a hydraulic piston designed to raise and support the boom butt up to 45 degrees, every time the boom butt is raised or lowered during the assembly process prior to completion of the gantry raising step.  Support of the boom butt by the boom butt handling cylinder is required whenever the boom butt is raised off blocking because without such support the weight of the boom butt itself can overhaul any support from the boom hoist line and ultimately cause the boom butt to fall.

**LAW:**

1.    This action is brought under the Connecticut Products Liability Act ("CPLA"), C.G.S. 52-572m et seq.

2.    Defendant is a seller under the CPLA.

3.    Both plaintiffs are claimants under the CPLA.

4.    Plaintiffs do not make a claim for breach of express or implied warranty.

**6A.    PLAINTIFF'S CONTENTIONS:**

1.    Plaintiff, Robert Gagnon, was caused to sustain personal injuries and associated damages and losses while in the course of his employment for Capco Steel Corporation on February 7, 2000 due to the defective nature of the instructions provided with a Manitowoc M-250 Crane designed, manufactured and sold by defendant, The Manitowoc Company, Inc.

2.      Plaintiffs' claim is premised on the CPLA, Conn. Gen. Stat. §52-572m, in particular §52-572q. It is plaintiff's assertion that defendant provided inadequate instructions on how to assemble the subject crane, and that had adequate instructions been provided by defendant, the incident in question would likely have not occurred. C.G.S. §52-572q(a).

**6B.    INTERVENING PLAINTIFF'S CONTENTIONS:**

The intervening plaintiff, Capco Steel, contends that per C.G.S. § 31-293, any recovery in this matter is to be apportioned so that its claim takes precedence over that of the plaintiff, employee, Robert Gagnon, after deduction of reasonable and necessary expenditures and attorneys fees. The intervening plaintiff claims that it is entitled to a credit or moratorium on future compensation payments equal to the plaintiff's net recovery in this action

**7.    DEFENDANT'S CONTENTIONS:**

1.      The accident occurred due to misuse of the crane.

2.      The accident was the fault of persons (Capco and its crew including Jerry Candelmo and John Malz) over whom defendant had no control or responsibility.

3.      Adequate warnings and instructions were given by Manitowoc to the persons or entities (purchaser Capco and its operators) best in position to take precautions against the potential harm.

4.      Failure of the assembly crew to follow assembly instructions and heed the warnings constituted alteration or modification of the crane.

5.      The plaintiff, Robert Gagnon, himself was at fault.

6.      The purchaser (Capco) and its crew were sophisticated users and aware of the dangers and hazards in the installation process).

7.      The crane was not unreasonably dangerous when assembled in accordance with the instructions and in view of the warnings provided.

8.      The crane was altered due to the failure to follow the assembly instructions.

**8.    LEGAL ISSUES:**

1.      Did the defendant violate the CPLA, Conn. Gen. Stat. §52-572m et seq., in particular, §52-572q, by providing inadequate instructions with the subject M-250 Crane?

2.      Was the failure to provide adequate instructions a proximate cause of the occurrence of February 7, 2000?

3.      Is plaintiff, Robert Gagnon, also legally responsible for the occurrence, and if so, to what percentage?

4.      What are fair, just and reasonable compensatory money damages for the injuries, damages and losses sustained and suffered by plaintiff, Robert Gagnon, due to this incident?

5.      What are fair, just and reasonable compensatory money damages for loss of consortium for plaintiff, June Gagnon?

6.      Was the failure of the Capco crew to follow the manufacturer's instructions misuse of the crane?

7.      Was the accident proximately caused by the fault of persons over whom the defendant had no control or responsibility?

8.    Were adequate warnings and instructions given by Manitowoc to the persons or entities (purchaser Capco and its operators) best in position to take precautions against the potential harm?

9.    Did the failure of the assembly crew to follow assembly instructions and heed the warnings constitute alteration or modification of the crane?

10.    Were the purchaser (Capco) and its crew sophisticated users?

11.    Was the crane unreasonably dangerous when assembled in accordance with the instructions and in view of the warnings provided?

9.    **VOIR DIRE QUESTIONS**

Attached hereto.

10.    **LIST OF WITNESSES**

I.    **PLAINTIFF'S WITNESSES:**

1.    **Robert Gagnon, South Windsor, Connecticut.**

Mr. Gagnon, the plaintiff, will testify as to his employment background, his experience as an ironworker, the events of the date he sustained his injuries, the nature and extent of his injuries, damages and losses, and the effects of these injuries on his life.

Estimated probable duration of witness's testimony is 2-3 hours.

2.    **June Gagnon, South Windsor, Connecticut.**

June Gagnon, a plaintiff, and plaintiff, Robert Gagnon's wife, will testify as to the physical, mental and emotional injuries sustained by her husband, and their effects, as well as concerning her loss of consortium claim.

Estimated probable duration of witness's testimony is 1 hour.

**3.    Gerald Candelmo, now or formerly of Cumberland, Rhode Island.**

Mr. Candelmo, a Capco Steel Corporation employee on February 7, 2000, was a participant in the assembly of the subject crane, and will testify as to his background, training, and experience in assembly of the subject crane and similar cranes, the events of the date in question, as well as alternative methods used for crane assembly after February 7, 2000

Estimated probable duration of witness's testimony is 1-2 hours.

**4.    John Malz, now or formerly of Manville, Rhode Island.**

Mr. Malz, a Capco Steel Corporation employee on February 7, 2000, was a participant in the assembly of the subject crane, and will testify as to his background, training, and experience in assembly of the subject crane and similar cranes, the events of the date in question, as well as alternative methods used for crane assembly after February 7, 2000.

Estimated probable duration of witness's testimony is 1-2 hours.

**5.    Kenneth Danielian, now or formerly of Cranston, Rhode Island.**

Mr. Danielian, a Capco Steel Corporation employee working as a foreman on February 7, 2000, will testify regarding his observations of the incident which occurred on February 7, 2000.

Estimated probable duration of witness's testimony is less than 1 hour.

**6.    Glenn Pierce, now or formerly of Collinsville, Connecticut.**

Mr. Pierce, a Capco Steel Corporation employee was working as a participant in the assembly of the subject crane on February 7, 2000, will testify regarding his observations of the incident which occurred on February 7, 2000.

Estimated probable duration of witness's testimony is less than 1 hour.

**7.    Elliot Henowitz, c/o Department of Public Safety, State of Connecticut, Office of the State Fire Marshall, Middletown, Connecticut.**

Mr. Henowitz, state crane inspector, will identify and explain what is shown in photographs he took of the subject crane and accident scene in connection with the incident of February 7, 2000.

Estimated probable duration of witness's testimony is less than 1 hour.

**8.    Detective John Kananowicz, c/o Connecticut State Police, 1111 Country Club Road, Middletown, Connecticut.**

Detective Kananowicz will identify and explain what is shown in the photographs taken of the accident scene and subject crane in connection with the incident of February 7, 2000.

Estimated probable duration of witness's testimony is less than one hour.

**9.    Matthew Burkhart, P.E., AEGIS Corporation, Southampton, PA 18966.**

Mr. Burkhart, an engineering consultant, will testify as an expert witness for plaintiff. In particular, Mr. Burkhart will testify as to his education, training and experience in

crane safety, his investigation and evaluation of the subject incident, and his opinion that the instructions provided by defendant for crane assembly of the subject crane were inadequate and a proximate cause of the accident of February 7, 2000. Details as to the opinions and reasons for opinions of Mr. Burkhart have been previously set forth in his report dated September 20, 2001, in the "Disclosure of Experts" dated November 5, 2001, and in his deposition of January 14, 2002.

Estimated probable duration of witness's testimony is 3-4 hours.

**10.    Bob Scalzi, c/o Capco Steel Corporation, 33 Acorn Street, Providence, Rhode Island, or his designee.**

Mr. Scalzi, a representative of Capco Steel Corporation, will testify that there were no material alterations or changes in the subject crane from the time it was first received by Capco Steel Corporation up until the time of the accident on February 7, 2000.

Estimated probable duration of witness's testimony is less than 1 hour.

**11.    David Rosenblum, M.D., Gaylord Hospital, Wallingford, Connecticut.**

Dr. Rosenblum will testify as to plaintiff, Robert Gagnon's, injuries suffered in the accident which occurred on February 7, 2000, including medical diagnoses, course of treatment, prognoses and treatment of plaintiff's injuries, and as to the causal connection of the injuries to the accident of February 7, 2000.

Dr. Rosenblum will rely upon the contents of his chart, x-rays and other diagnostic studies and the hospital records of Gaylord Hospital and other providers as well as his examination and treatment of the plaintiff, Robert Gagnon.

The full details of Dr. Rosenblum's testimony is set forth in his reports and deposition.

Estimated probable duration of witness's testimony is 1-2 hours.

**12.    Gerald Becker, M.D., Orthopedic Associates of Hartford, P.C., 85 Seymour Street, Suite 607, Hartford, Connecticut.**

Dr. Becker will testify as to plaintiff, Robert Gagnon's, injuries suffered in the accident which occurred on February 7, 2000, including medical diagnoses, course of treatment, prognoses and treatment of plaintiff's injuries, and as to the causal connection of the injuries to the accident of February 7, 2000.

Dr. Becker will rely upon the contents of his chart, x-rays and other diagnostic studies and the hospital records of Hartford Hospital and other providers, as well as his examination and treatment of the plaintiff, Robert Gagnon.

The full details of Dr. Becker's testimony is set forth in his reports and deposition.

Estimated probable duration of witness's testimony is 1-2 hours.

**13.    David Feingold, M.D., c/o Easter Seals Greater Hartford Rehabilitation Center, Inc., 100 Deerfield Road, Windsor, Connecticut**

Dr. Feingold will testify as to plaintiff, Robert Gagnon's, injuries suffered in the accident which occurred on February 7, 2000, including medical diagnoses, course of treatment,

prognoses and treatment of plaintiff's injuries, and as to the causal connection of the injuries to the accident of February 7, 2000.

Dr. Feingold will rely upon the contents of his chart, x-rays and other diagnostic studies and the records of Easter Seals Greater Hartford Rehabilitation and other providers, as well as his examination and treatment of the plaintiff, Robert Gagnon.

The full details of Dr. Feingold's testimony is set forth in his reports.

Estimated probable duration of witness's testimony is 1-2 hours.

14. **Jerrold L. Kaplan, M.D., Industrial Rehabilitation, Gaylord Hospital, Inc., PO Box 400, Wallingford, CT 06492**

Dr. Kaplan will testify as to plaintiff, Robert Gagnon's, injuries suffered in the accident which occurred on February 7, 2000, including medical diagnoses, course of treatment, prognoses and treatment of plaintiff's injuries, and as to the causal connection of the injuries to the accident of February 7, 2000.

Dr. Kaplan will rely upon the contents of his chart, x-rays and other diagnostic studies and the hospital records of Gaylord Hospital and other providers, as well as his examination and treatment of the plaintiff, Robert Gagnon.

The full details of Dr. Kaplan's testimony is set forth in his reports and deposition.

Estimated probable duration of witness's testimony is 1-2 hours.

NOTE: Defendant will present objections to the proposed expert testimony of Matthew Burkhart. This will be done via Motion in Limine.

**DEFENDANT'S WITNESSES:**

**1.    Detective W.T. Lewis, Connecticut State Police Department, Middletown, Connecticut**

Detective Lewis will describe his investigation of the accident and his findings.

Estimated probable duration of testimony is 2 hours.

**2.    Elliot Henowitz, Connecticut Crane Inspector, Department of Public Safety, Middletown, Connecticut**

Mr. Henowitz will describe his investigation of the accident and his findings.

Estimated probable duration of testimony is 2 hours.

**3.    Gerald Candelmo, Capco Crane Operator, Middletown, Rhode Island**

Mr. Candelmo will describe what he did and how the accident happened.

Estimated probable duration of testimony is 2 hours.

**4.    John Malz, Capco Master Mechanic, Manville, Rhode Island**

Mr. Malz will describe what he did and how the accident happened.

Estimated probable duration of testimony is 2 hours.

**5.    John Kennedy, of Manitowoc, Manitowoc, Wisconsin**

Mr. Kennedy will describe the assembly and operation of the M 250 crane model and narrate a video of the crane assembly.  He will also explain the Operator's Manual, instructions, warnings and decals and Builder's Plate.  He will also testify to his involvement in the investigation of the accident.

Estimated probable duration of testimony is 4 hours.

6.     **James Rasmussen, retired field service representative of Manitowoc, of Manitowoc, Wisconsin**

Mr. Rasmussen will testify to the initial customer visit to Capco in Providence, Rhode Island in November of 1997, and his instruction and demonstration of the assembly of the crane.

Estimated probable duration of testimony is less than 1 hour.

7.     **Keith Krish, field service representative of Manitowoc, Manitowoc, Wisconsin**

Mr. Krish will testify to his customer service visit to the location of the crane on a job site in Franklin, Massachusetts in late November and early December of 1997, and his instructions and demonstration of the assembly of the crane.

Estimated probable duration of testimony is less than 1 hour.

8.     **Jeffrey Keil, field service representative of Manitowoc, Manitowoc, Wisconsin**

Mr. Keil will testify to his accident investigation in February 2000.

Estimated probable duration of testimony is less than 1 hour.

9.     **Ricky Morra, Shawmut Equipment Corp., Manchester, Connecticut**

Mr. Morra will testify to his attendance with Capco at the assembly and disassembly of the crane on occasions prior to the date of the accident, and his instruction and demonstration to Gerald Candelmo of Capco.

Estimated probable duration of testimony is less than 1 hour.

**10.     John Lanning, Senior Vice President, Applications Engineering, MCC, Manitowoc, Wisconsin**

Mr. Lanning will testify as to the design and development of the model M 250 crane and the assembly process. He will testify as an expert witness. He will analyze the accident and the cause. He will testify that the design for assembly is safe and efficient and the instructions are clear and safe and not unreasonably dangerous. He will testify that the alternate assembly sequence recommended by plaintiff's expert, Matthew Burkhart, is not safe. A copy of Mr. Lanning's written opinions and of his affidavit supplementing the opinions, a list of the materials upon which he relies, and his C.V. are attached.

Estimated probable duration of testimony is 2 to 3 hours.

**11.     Curt Lund, a professional crane inspector and consultant, 79 Quartermaster Row, South Yarmouth, Massachusetts**

Mr. Lund will testify as an expert witness. Mr. Lund will testify that the M 250 crane is not defective nor unreasonably dangerous during assembly if the assembly guides and instructions are followed as spelled out by Manitowoc. He will also testify that the Capco crew was negligent in not following the Manitowoc assembly guide and instructions, and in not using the boom butt cylinder to support the boom butt while allowing workmen to go under the raised boom butt. He will also testify plaintiff himself was negligent by going under a suspended boom when the boom was not properly blocked and secured. He will comment upon Mr. Burkhart's

testimony.  A copy of his written opinions, supplement to opinion, and of his affidavit supporting

his opinions, a list of the materials upon which he relies, and his C.V. are attached.

Estimated probable duration of testimony is 2 hours.

**12.    Edward Caulfield, President and Chief Technical Officer of Packer Engineering, Inc., 1950 North Washington Street, Naperville, Ilinois**

Mr. Caulfield will testify as an expert witness.  He will testify that the Manitowoc

assembly instructions were adequate and allowed for safe and proper assembly of the crane and

specifically warned against the error committed by the Capco assembly crew.  He will testify that

Capco crew violated the instructions and violated the applicable industry standards and federal

regulations.  His opinion is that nothing Manitowoc did or did not do caused the accident and

that plaintiff acted improperly by going under the raised boom.  A copy of his written opinions,

supplement to opinion and of his affidavit supporting his opinions, a list of the materials upon

which he relies, and his C.V. are attached.

Estimated probable duration of testimony is 2 to 3 hours.


NOTE:  Plaintiff will present objections to certain aspects of the proposed expert
testimony of John Lanning, Curt Lund and Edward Caulfield.  This will be done via a Motion in
Limine.


**11.    PLAINTIFF'S EXHIBITS:**

1.    Schedule of Special Damages (medical expenses).

2.    Billing statement of Life Star Air Medical Ambulance for services rendered on
       2/7/00 in the amount of $6,262.50.

3. Billing statement of Lawrence & Memorial Paramedic Service for services rendered 2/7/00 in the amount $398.00.

4. Billing statement of Lawrence & Memorial Hospital for services rendered on 2/7/00 in the amount of $4,956.72.

5. Billing statement of Joel Abramovitz, M.D. for services rendered on 2/7/00 in the amount of $225.00.

6. Billing statement of Ocean Radiology for services rendered on 2/7/00 in the amount of $  **TBP.**

7. Billing statement of Hartford Hospital for services rendered from 2/7/00-4/10/00 in the amount of $323,135.61.

8. Billing statement of Hartford Hospital for services rendered from 4/15/00-4/18/00 in the amount of $8,936.71.

9. Billing statement of Hartford Hospital for services rendered on 7/21/00 (Doppler test) in the amount of $359.22.

10. Billing statement of Hartford Hospital for services rendered on 10/5/00 (MRI) in the amount of $776.04.

11. Billing statement of Hartford Hospital for services rendered on 11/7/00 (EMG) in the amount of $923.72.

12. Billing statement of Hartford Hospital for services rendered on 2/8/01 (surgery) in the amount of $4,877.18.

13. Billing statement of Hartford Hospital for services rendered on 8/22/01 (surgery) in the amount of $559.38.

14. Billing statement of Hartford Anesthesiology for services rendered on 2/8/00, 2/17/00, 2/25/00, 2/8/01 and 8/22/01 in the amount of $12,560.00.

15. Billing statement of Hospital Radiologists for services rendered from 2/7/01 - 3/20/00 in the amount of $10,217.50.

16.    Billing statement of Hartford Hospital Professional Services for services rendered from 2/7/01- _____ in the amount of $ **TBP.**

17.    Billing statement of Hartford Cardiac Lab for services rendered from 2/7/00 - _____ in the amount of $ **TBP**.

18.    Billing statement of Connecticut Surgical Group for services rendered from 2/8/00 – 3/8/02 in the amount of $1,064.00.

19.    Billing statements of William H. Druckemiller, M.D. for services rendered on 2/8/00, 7/7/00, 11/3/00 in the amount of $6,405.00

20.    Billing statements of Connecticut Multispecialty Group for services rendered on 2/9/00-2/27/00 in the amount of $11,375.00.

21.    Billing statements of Gerald Becker, M.D. for services rendered on 2/9/00, 7/7/00, 9/29/00, 10/20, 12/1/00, 1/12/01, 2/8, 3/2, 4/27, 7/13/01, 1/7/02, 8/5/02, 2/24/03 and 8/22/03 in the amount of $21,138.00.

22.    Billing statements of Richard Linburg, M.D. for services rendered on 3/20/01, 8/13/01, 8/22; 8/29; 9/4, 11/27/01 in the amount of $1,801.00.

23.    Billing statement of Dr. David Hill for services rendered on 4/17/00 in the amount of $239.00.

24.    Billing statement of Gaylord Hospital for services rendered from 4/10/00-4/15/00 in the amount of $7,266.75.

25.    Billing statement of Gaylord Hospital for services rendered from 4/18/00-6/20/00 in the amount of $67,387.44.

26.    Billing statement from Hunters Ambulance for services rendered on 4/14/00 in the amount of $ **TBP.**

27.    Billing statement from American Medical Response Ambulance for services rendered on 4/18/00 in the amount of $ **TBP.**

28.     Billing statement of Easter Seals Greater Hartford Rehab for services rendered from 6/21/00-12/26/00 and 3/12/01-5/2/01 in the amount of $11,410.00.

29.     Billing statement of South Windsor Pharmacy for services rendered from 6/20/00-2/10/01 in the amount of $224.13.

30.     Billing statements of Dr. Raymond Kurker for services rendered on 7/31/00, 1/29/01, 8/13/01, 6/7/02 in the amount of $665.00.

31.     Billing statement of Michael Serow, D.D.S. for services rendered from 7/21/00-2/26/02 in the amount of $3,072.00.

32.     Billing statements of Dr. David Rosenblum, Gaylord Hospital for services rendered on 8/31/00, 10/27/00, 1/25/01 in the amount of $503.00.

33.     Billing statement of Dr. David Rosenblum, Gaylord Hospital for services rendered on 10/4/01 in the amount of $129.00.

34.     Billing statement of Manchester Memorial Hospital for services rendered on 1/29/01 in the amount of $170.00.

35.     Billing statement of Quest Diagnostics for services rendered on 1/30/01 in the amount of $143.80.

36.     Billing statement of Dr. Richard Delaney for services rendered on 11/16/01 in the amount of $1,512.00.

37.     Billing statement of Carol Fortin, P.T., Gaylord Hospital dated 12/10/01 in the amount of $396.00.

38.     Record from New London Fire Department for services rendered on 2/7/01.

39.     Record of Life Star Air Medical Ambulance for services rendered on 2/7/00.

40.     Records of Lawrence & Memorial Paramedic Service for services rendered on 2/7/00.

41.     Records of Lawrence & Memorial Hospital for services rendered on 2/7/00.

42. Complete hospital chart from Hartford Hospital for services rendered from 2/7/00 through 4/10/00.

43. Complete hospital chart from Hartford Hospital for services rendered from 4/15/00 through 4/18/00.

44. Discharge summary from Hartford Hospital for services rendered from 2/7/00 through 4/10/00.

45. Discharge summary from Hartford Hospital for services rendered from 4/15/00 through 4/18/00.

46. Record from Hartford Hospital for services rendered on 7/21/00 (Doppler test).

47. Record from Hartford Hospital for services rendered on 10/5/00 (MRI).

48. Records from Hartford Hospital for services rendered on 11/7/00 (EMG).

49. Operative report from Hartford Hospital for services rendered on 2/8/00.

50. Operative report from Hartford Hospital for services rendered on 8/22/01.

51. Report from Dr. Bert Berlin for services rendered on March 8, 2003.

52. Report from Dr. Rocco Orlando for services rendered on May 2, 2003.

53. Records from William H. Druckemiller, M.D. for services rendered on 2/8/00, 7/7/00 and 11/3/00.

54. Records from Gerald Becker, M.D. for services rendered on 2/9/00, 7/7/00, 9/29/00, 10/20, 12/1/00, 1/12/01, 2/8, 3/2, 4/27, 7/13/01, 1/7/02, 1/10/02, 2/19/02, 8/5/02, 2/24/03, and 8/22/03.

55. Records from Richard Linburg, M.D. for services rendered on 3/20/01, 8/13/01, 8/22; 8/29;9/4, and 11/27/01.

56. Records of Dr. David Hill for services rendered on 4/17/00.

57.   Complete records from Gaylord Hospital for services rendered from 4/10/00 through 4/15/00.

58.   Complete records from Gaylord Hospital for services rendered from 4/18/00 through 6/20/00.

59.   Discharge summary from Gaylord Hospital for services rendered 4/10/00 through 4/15/00.

60.   Discharge summary from Gaylord Hospital for services rendered 4/18/00 through 6/20/00.

61.   Records from Easter Seals Greater Hartford Rehab for services rendered from 6/21/00-12/26/00,and 3/12/01-5/2/01.

62.   Records of Dr. Raymond Kurker for services rendered on 7/31/00, 1/29/01, 8/13/01, and 6/7/02.

63.   Records from Dr. Edward Fredericks for services rendered 6/29/01.

64.   Records of Michael Serow, D.D.S. for services rendered from 7/21/00-2/26/02.

65.   Records of Dr. David Rosenblum, Gaylord Hospital for services rendered on 8/31/00, 10/27/00, 1/25/01 and 10/4/01.

66.   Records of Dr. Richard Delaney for services rendered on 4/14/00 and 11/16/01.

67.   Records from Quest Diagnostics for services rendered on 1/30/01.

68.   Records from Hartford Hospital Center for Rehabilitation for services rendered on 6/15/01.

69.   Records from Dr. Edward Fredericks for services rendered on 6/29/01.

70.   Records of Carol Fortin, P.T., Gaylord Hospital for services rendered on 12/10/01.

71.   Records of Jerrold Kaplan, M.D., for services rendered 8/19/03.

72.    (Redacted) Connecticut State Police investigation report, Case No. P-00-00192-5.

73.    (Redacted) New London Connecticut Police investigation report, Incident No. 01-00-000473.

74.    (Redacted)OSHA Report.

75.    Twenty-one photographs taken by Chief John Kananowicz of the Connecticut State Police, with photo log sheet.

76.    Four photographs taken by Inspector Eliot Henowitz, with photo log sheet.

77.    Seven Photographs of the scene (exhibits 2A – 2G of the Henowitz deposition)

78.    Twelve photographs of the plaintiff while in the hospital.

79.    Defendant's Responses to Supplemental Interrogatory and Requests for Production dated November 15, 2001.

80.    (Redacted) Defendant's Responses to Plaintiff's Supplemental Interrogatories and Requests for Production dated November 28, 2001, November 30, 2001, and filed on December 28, 2001.

81.    Daily diaries of James Rasmussen from November 16, 1997 through November 21, 1997.

82.    Manitowoc M250 300 Ton Liftcrane – 30,000-lb. Clamshell (5 pages) (brochure).

83.    Folio 1409-1 "Assembly/Disassembly" 9-21-92 (revision 06-20-94).

84.    Blow-up enlargement of Figure 1- Folio 1409-1; "Crane's Major Assemblies".

85.    Blow-up enlargement of Figure 26 -Folio 1409-18; "M-250 Fully Assembled and Rigged".

86.    Folio 1375-1 "Gantry Raising/Lowering" 1-17-92 (revision 3-3-93).

87.    Blow-up enlargement of Figure 1 – Folio 1375-3; "Gantry Assembly".

88.    Curriculum Vitae of Matthew Burkhart.

89.    Curriculum Vitae of Dr. David Rosenblum.

90.    Curriculum Vitae of Dr. Gerald Becker.

91.    Curriculum Vitae of Dr. Jerrold Kaplan.

92.    Income tax return filed by Robert Gagnon for the year 1998.

93.    Income tax return filed by Robert Gagnon for the year 1999.

94.    Income tax return filed by Robert Gagnon for the year 2000.

## II.    **DEFENDANT'S EXHIBITS:**

1.    Manitowoc's Owner's Manual for the M 250, s/n 2501105.

2.    New London Police Department copies of 7 photographs (Depo. Ex. 2A – 2G).

3.    Connecticut State Police Report (Depo. Ex. 3)

4.    Manitowoc Assembly/Disassembly Guide, Folio 1409 (rev. 6-20-94) (Depo. Ex. 4).

5.    Manitowoc Gantry Raising and Lowering Folio 1375 (rev. 3-3-93) (Depo. Ex. 5) plus blow up of page 1375-1.

6.    ADP Marshall Accident/Incident Investigation Report (3 page report only) (Depo. Ex. 7).

7.    Capco Steel Corporation Job Hazard Analysis and checklists (Depo. Ex. 8).

8.    Statement of John Malz 2-7-00 (Depo. Ex. 9).

9.    Statement of Gerald Candelmo (Depo. Ex. 10).

10.    State Police photographs 2-7-00 by Officer Kananowitz (Depo. Ex. 14-1 -14-21).

11.    State Police Department Data Sheet for Film Submitted (Depo. Ex. 15).

12. State Board for Crane Operation records concerning this accident, including specifically letters of 10- 4-00 and 12-6-00 and minutes of 9-6-00, and 11-1-00 (Depo. Ex. 16).

13. State Crane Inspectors photographs (4) (Depo. Ex. 17A -- 17-D).

14. Blow up of Folio 1375-3 (diagram of crane, Figure 1, Gantry Assembly) (Depo. Ex. 18).

15. Blow up of Folio 1409-18 (Figure 26, M 250 fully assembled and rigged) (Depo. Ex. 20).

16. Manitowoc e-mail notes of 2-7-00 and 2-8-00 re: report of accident. (Depo. Ex. 24).

17. Manitowoc Field Service Report by Jeff Keil 2-8-00 (Depo. Ex. 25).

18. Field Service notes by James Rasmussen, 11-23-97 – 11-26-97 and Field service Notes by Keith Krish, 11-30-97 – 12-3-97 (Depo. Ex. 26).

19. Manitowoc Field Service Report by James Rasmussen, 11-26-97.

20. Manitowoc New Machine Fee Checklist, 12-1-97.

21. Manitowoc New Machine Fee Checklist, 12-3-97 by Keith Krish.

22. Manitowoc New Machine Fee Checklist, 12-15-97.

23. Manitowoc New Machine Fee Checklist, 7-8-99.

24. OSHA Citation and Notification of Penalty, issued 4-25-00 to Capco Steel Corporation (Depo. Ex. 34).

25. Expert Report of John Lanning, 2-21-02 (Depo. Ex. 50).

26. C.V. of John Lanning (Depo. Ex. 51)

27. Expert Report of Edward M. Caulfield, 2-20-02 (Depo. Ex. 52).

28. C.V. of Edward M. Caulfield (Depo. Ex. 53).

29.    Caulfield Appendix A, File Material 2-20-02 (Depo. Ex. 55).

30.    Caulfield List of File Material, 5-7-02 (Depo. Ex. 55-A).

31.    Curt Lund Expert Report, 2-12-02 (Depo Ex. 56).

32.    Caulfield supplemental report, 7-22-02 (Ex. 106A).

33.    Caulfield Appendix A1, Additional File Material (Depo. Ex. 106B).

34.    Curt Lund Supplemental Report, 7-25-02 (Ex. 107).

35.    Manitowoc New Equipment Warranty (Ex. 108).

36.    Plan of Builder's Plate, DWG. No. 181503, 2-14-97 (Ex. 110).

37.    ASME Standard B30.5-1968, §§5-3.1.1 – 5-3.1.3.

38.    ASME Standard B30.5-1994, §§5-3.1.3 – 5-3.2.1.3.

39.    ASME Standard B30.5-2000, §§5-3.1.3 – 5-3.2.1.3.

40.    OSHA regulations, 29 CFR 1910.180, 1926.550.

41.    Excerpt from Operator's Manual, Title page (Ex. 101).

42.    Excerpt from Operator's Manual, Folio 953 (rev. 2-20-96), Safety Messages (Ex. 102).

43.    Excerpt from Operator's Manual, Folio 1113 (rev. 8-21-96), Safe Operating Practices (Ex. 103).

44.    Diagram of DWG. No. 172859, Decal on remote controls (Ex. 104).

45.    Diagram of DWG. No. 176882, Decal on chart holder inside operator's cab (Ex. 105).

46.    Video Tape of assembly of M 250 crane.

47.    Photos taken by Edward Caulfield (128).

48.     New London Police Department report.

49.     Manitowoc Packing list (7-22-97) and Shipping List (10-28-97) re: Operator's Manual.

50.     U.S. Department of Labor, OSHA Report #109846006.

51.     Academic transcript of plaintiff's expert witness, Mathew Burkhart.

52.     Manual – Crane Safety on Construction Sites by ASCE.

53.     Manitowoc engineering assembly drawings and sketches.

Defendant reserves the right to supplement or amend this list in response to plaintiffs' proof and in rebuttal. Defendant will also offer enlargements of portions of the exhibits to assist the testimony of witnesses and to assist the jury.

## 12.     DEPOSITION TESTIMONY:

### A.     PLAINTIFF'S PROPOSED DEPOSITION TESTIMONY

None at this time. However, should any of the listed witnesses who have been deposed prove to be unavailable at the time of trial, plaintiff reserves the right to introduce deposition testimony.

### B.     DEFENDANT'S PROPOSED DEPOSITION TESTIMONY

None at this time. However, should any of the listed witnesses who have been deposed prove to be unavailable at the time of trial, defendant reserves the right to introduce deposition testimony.

13.    **REQUESTS FOR JURY INSTRUCTIONS:**

      Attached hereto.

14.    **ANTICIPATED EVIDENTIARY PROBLEMS:**

    1.    Plaintiff will be filing a Motion in Limine before trial to preclude questioning, evidence, and/or testimony as to certain subjects including:

        a)    The OSHA citation of plaintiff's employer.

        b)    Portions of the OSHA report.

        c)    Portions of the Connecticut State Police report.

        d)    Portions of the New London Police report.

        e)    The proceedings of the Connecticut Crane Safety Board

        f)    Any opinions and conclusions of state crane inspector, Elliot Henowitz,

        g)    Any evidence or testimony to establish negligence on the part of plaintiff, Robert Gagnon's, employer, or fellow employees.

        h)    The transcription of the college grades of plaintiff's expert witness, Matthew Burkhart.

        i)    The ADP Marshall accident/incident report

        j)    Admissibility of certain aspects of the proposed testimony of defendant's liability experts, John Lanning, Curt Lund and Edward Caulfield.

2.    Defendant will be filing a Motion in Limine before trial to preclude the testimony

of plaintiff's expert Matthew Burkhart on <u>Daubert/Kuhmo</u> grounds.  Defendant objects to

testimony of plaintiffs' expert Matthew Burkhart.  He is not qualified to testify as to crane

assembly and his opinion is not based on the evidence as to how the accident happened, his

testimony is not the product of reliable principles and methods and he has not applied principles

and methods reliably to the facts of the case.

3.    Defendant will object tot the admissibility of testimony of medical and hospital

bills with respect to amount of charges which can be proved to the jury in view of facts that bills

were paid in full by workers' compensation in amounts often less than the original face amount

of the bills.

4.    Admissibility of testimony of State Crane Inspector Elliot Henowitz and State

Police Detective W.T. Lewis.  Defendant contends their testimony is fully admissible.

5.    Defendant will also object to plaintiffs' proposed Motions in Limine re:

a.    OSHA citation;

b.    OSHA report;

c.    Connecticut State Police Report;

d.    New London Police Report;

e.     Connecticut Crane Safety Board;

f.     Opinions of Elliot Henowitz and Detective W.T. Lewis;

g.     Plaintiffs' claims that <u>Durniak v. August Winter and Sons, Inc.</u>, 222 Conn. 775 (1992) applies to this case bar proof of fault of third parties including plaintiff's employer, Capco, which was the owner purchaser of the crane.  Briefs will be filed; see e.g. <u>Elliot v. Sears Roebuck & Co</u>., 229 Conn. 500 (1994).

h.     The academic transcript of Matthew Burkhart;

i.     The admissibility of the ADP Marshall report;

j.     Admissibility of certain aspects of the proposed testimony of defendant's liability experts, John Lanning, Curt Lund and Edward Caulfield

15.   **PROPOSED FINDINGS AND CONCLUSIONS:**

Not applicable because this case will be tried to a jury.

16.   **LENGTH OF TRIAL**

The parties estimate that the evidence will last five days plus time for jury argument, charge and deliberations

17.   **FURTHER PROCEEDINGS**

The parties request a hearing on pending and contemplated motions and a filing and briefing schedule for same, including Motions in Limine, before evidence commences.

18. **ELECTION FOR TRIAL BY MAGISTRATE JUDGE**

The parties do not agree to trial by Magistrate Judge.

19. **STATEMENT IN LIEU OF OPENING STATEMENT:**

To be supplied.

. 20. **VERDICT FORM:**

Attached hereto.

21. **AVAILABILITY OF WITNESSES:**

To be determined.