II.    PLAINTIFF'S ADDITIONAL PROPOSED INSTRUCTIONS AND DEFENDANT'S
       OBJECTIONS THERETO

### 1. Products Liability – Basic Elements of Proof

There are certain basic elements of proof in a products liability case brought under the

Connecticut Products Liability Statute.  First, the claim must be made by a "claimant" against a

"product seller" as those terms are defined in the statute.  You are hereby instructed that the

plaintiffs are "claimants" under this statute, and that the defendant satisfies the statutory

definition of "product seller".  Therefore, you need not concern yourself further with these

elements of proof.

It is further required by the statute that the product in question-in this case the M-250

Crane-was expected to, and did, reach the ultimate consumer – in this case, Capco Steel

Corporation -  in substantially the same physical condition it was in when initially manufactured

and distributed by the defendant.  The defendant in this case does not contest that the subject

crane was in substantially the same physical condition at the time of the incident of February 7,

2000 as it was in when initially manufactured and sold.  You may therefore consider that element

of proof satisfied as well.

OSS/PLAINTIFF/CRADDOC/PLEADINGS/AMENDEDCOMPLAINT

19

The defendant does, however, contest certain other elements of proof necessary to establish a products liability case.  I will now explain those additional elements.

Connecticut General Statutes, §52-572m, et seq.

**OBJECTION:**

## 2. <u>Products Liability - Lack of Adequate Instructions</u>

In this case, the plaintiff claims that the defendant is liable for damages under the Connecticut Products Liability Act because it did not provide adequate instructions to users of the crane. This claim is based on a particular section of the Connecticut's Product Liability Act which provides, in relevant part, as follows:

> A product seller may be subject to liability for harm caused to a claimant who proves by a fair preponderance of the evidence that the product was defective in that adequate...instructions were not provided.

> In determining whether...instructions... were required, and if required, whether they were adequate, the [jury] may consider: (1) the likelihood that the product would cause the harm suffered by the claimant; (2) the ability of the product seller to anticipate at the time of manufacture that the expected product user would be aware of the products risks, and the nature of the potential harm; and (3) the technical feasibility and cost of instructions.

In this particular case, the defendant does not contest that adequate instructions were required for the safe assembly of the crane. Therefore, you need only determine whether the instructions provided by defendant were, in fact, adequate. In this regard, as stated above, you may consider as factors the likelihood that the crane would cause the type of harm suffered by Mr. Gagnon; the ability of the defendant to anticipate at the time of manufacture of the crane that the expected product user (such as in this case, the employees of Capco Steel Corporation) would be aware of the product's risks; and the nature of the potential harm that might ensue.

You need not concern yourselves with that portion of the statute which provides for a consideration of the technological feasibility and costs of instructions, as the defendant does not contest that providing instructions was both technically feasible and a necessary cost of the sale.

In considering whether the instructions provided with the crane were adequate, you should consider all of the evidence, whether submitted by the plaintiff or defendant, and come to a fair decision on this issue.

Connecticut General Statutes, §52-572q

**OBJECTION:**

### 3. __Opinion Evidence – Expert Witness__

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists as to those whom we call "expert witnesses." Witnesses who, by education and experience, have become expert in some art, science, profession, or calling, may state their opinions as to relevant and material matters, in which they profess to be expert, and may also state their reasons for the opinion.

You should consider each expert opinion received in evidence in this case, and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.

Salem v. United States Lines, Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962) rehearing denied 370 U.S. 965, 82 S.Ct. 1578 8 L.Ed.2d 834 (1962), on remand 304 F.2d 672 (2d Cir.1962); Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627-628, 64 S.Ct. 724, 728-729, 88 L.Ed. 1593 (1944), rehearing denied 322 U.S. 767, 64 S.Ct. 941, 88 L.Ed. 1593 (1944); United States v. Spaulding, 293 U.S. 498, 506, 55 S.Ct. 273, 276, 79 L.Ed. 617 (1935); Holm v. United States, 325 F.2d 44 (9th Cir.1963). Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, §72.08

## OBJECTION:

### 4. <u>Comparative Responsibility Defense to Products Liability Claim</u>

In this case, the defendant has asserted what is called an "affirmative defense". This defense is that Robert Gagnon's conduct was also a substantial factor in causing the incident in question, and that plaintiffs' recovery should therefore be diminished or barred because of plaintiff, Robert Gagnon's "comparative" responsibility for the incident of February 7, 2000.

Before discussing this defense, I must remind you that it is the defendant, Manitowoc, that bears the burden of establishing this defense by a fair preponderance of the evidence. Just as the plaintiffs are required to prove the basic elements of their case by a fair preponderance of the evidence, the defendant, Manitowoc, is required by the same amount or quantum of proof to establish any alleged "affirmative defenses". Therefore, if the defendant does not meet its burden of establishing by a fair preponderance of the evidence the material allegations of this "affirmative defense", it must be disregarded in your deliberations.

The defense of comparative responsibility is based on a section of the Connecticut Products Liability Act which provides, in relevant part, as follows:

> In any [products liability] claim…the comparative responsibility
> of…the claimant…shall not bar recovery but shall diminish the award
> of compensatory damages proportionately, according to the measure of
> responsibility attributed to the claimant. …in determining the
> percentage of responsibility, the jury shall consider, on a comparative
> basis, both the nature and quality of the conduct of the party.

What does this statute mean, in practical terms?

First, I should explain that the statute is what is considered a "pure comparative responsibility" statute. In other words, if you find that <u>both</u> defendant and plaintiff are legally responsible for the incident of February 7, 2000, then the plaintiff will still be entitled to a damages award for that percentage of the total responsibility for the incident that is attributable to the defendant. Putting this in simple terms, if the defendant is found to be one hundred percent responsible for the occurrence, then an award of damages to plaintiffs will not be diminished or cut back. If, however, the plaintiff, Robert Gagnon, is found to be twenty-percent responsible for the occurrence, and the defendant eighty-percent responsible, then the plaintiffs' damages award will be cut back twenty percent. Similarly, if the plaintiff, Robert Gagnon, is found to be fifty-percent responsible for the occurrence, and the defendant fifty-percent responsible, then, by using the same methodology, the plaintiffs' damages award will be diminished or cut back fifty percent. This same type of calculation could extend on theoretically up to ninety-nine percent so that the plaintiff, Robert Gagnon, could be ninety-nine percent responsible for the incident, and still recover one-percent of the total damages award.

Please understand that I am not suggesting or implying any of these examples should bear on the facts of this case, but am merely trying to explain the way in which the statute works.

Second, you are probably thinking that if you find there is an element of fault on both sides, how do you make the comparison of fault? As the statute instructs, if you have found that the defendant failed to provide adequate instructions, and that had adequate instructions had been

provided the incident in question would not have occurred, then you should consider whether or not the plaintiff's own improper conduct was itself a substantial factor in causing this incident. If you find this to be the case, then you should assign a percentage of responsibility to both plaintiff and defendant. In making the comparison, the statute instructs that you should consider "...on a comparative basis, both the nature and quality of the conduct of [each] party." As explained, the percentage of responsibility attributable to plaintiff, if you find there to be any, will act to diminish or reduce the total compensatory damages award that you make.

Revised from Connecticut Judicial Department Website, <u>Connecticut Jury Instructions (Civil)</u>, §5-3; see Connecticut General Statutes, §52-572o.

**OBJECTION**:

5. **Concurrent Causation**

Under the applicable law, there may be more than one legal cause for an accident or

injury producing event. So long as the defendant's conduct in providing inadequate assembly

instructions -- if you find this to have been established -- was a substantial factor in producing the

plaintiff's injuries, the defendant would not be relieved from liability for those injuries even

though another force concurred to produce them.


Miranti v. Brookside Shopping Center, Inc., 159 Conn. 24, 29 (1969);
Merhi v. Becker, 164 Conn. 516, 521 (1973)


**OBJECTION:**

### 6. **Damages of Robert Gagnon**

With regards to damages for personal injuries, you are instructed that the plaintiff, Robert Gagnon, is entitled to an award of damages in an amount which you determine will fully, fairly, and justly compensate him for the injuries and losses which he has sustained. The rule is, that insofar as money can accomplish this, the plaintiff is to receive fair and just compensation for the injuries he has suffered. It is for you, in the exercise of your best judgment, to say what is fair and just compensation to him, insofar as money will compensate him, for the injuries and losses which he has suffered. There is no fixed rule which you can apply. You have to apply sound common sense in reaching the amount of your verdict. In a personal injury action such as this, damages are assessed up to the date of trial and include all future, as well as past, physical and mental pain and suffering, permanent physical and mental injuries and impairments, past and future hospital and medical expenses, wage loss from employment, impairment or destruction of the capacity to earn wages, and interference with plaintiff's ability to enjoy life and carry on his usual activities, hobbies and recreations as before the accident.

You should understand that there are, in general, two basic categories of damages. The first, what we call economic loss, are the tangible items, such as medical expenses and lost wages, which can be added up with a piece of paper and a pencil. The second category are the intangible losses, such as pain and suffering and permanent impairment. These items are also called "non-economic loss". In arriving at the amount of damages to be awarded to the plaintiff,

Robert Gagnon, you must bear in mind that the plaintiff, Robert Gagnon, should be awarded a sum of money which will fairly and justly compensate him for all of the following categories of damages, to the extent you find them to have been established:

As to economic damages:

    1.    All hospital and medical expenses he has incurred as a consequence of the injuries he sustained on February 7, 2000;

    2.    All future hospital and medical expenses which from the evidence you find to be reasonably probable;

    3.    The wages Robert Gagnon lost as a consequence of the injuries he sustained on February 7, 2000, up until the time of trial;

    4.    The impairment or destruction of plaintiff, Robert Gagnon's, capacity to earn wages in the future.

As to non-economic damages:

    1.    All physical pain and suffering that Robert Gagnon has sustained and suffered as a result of the occurrence up until the time of trial, and all physical pain and suffering that you find Robert Gagnon will sustain and suffer in the future, up until the end of his life;

    2.    All mental pain and suffering, nervousness, anxiety and emotional distress that Robert Gagnon has sustained and suffered as a result of the occurrence up until the time of trial,

and all mental pain and suffering, nervousness, anxiety and emotional distress that you find Robert Gagnon will sustain and suffer in the future, up until the end of his life;

3.      The increased likelihood that Robert Gagnon may have future medical problems, complications, disabilities and/or surgeries.

4.      Fear, anxiety and emotional distress relative to Robert Gagnon's concern that there may be additional or continued medical problems, complications, and disabilities occasioned by the injuries sustained on February 7, 2000.

5.      The impairment of the Robert Gagnon's ability to enjoy life and carry on his usual activities, hobbies and recreations, both past and future.

6.      The permanent injuries and impairments that Robert Gagnon sustained and suffered, and their effects upon him, and the probable consequences and effects of them in the future, up until the end of his life.

Duffy v. Bishop, 99 Conn. 573 (1923);
Petriello v. Kalman, 215 Conn. 377 (1990); and
Wright & Ankerman, Connecticut Jury Instructions (Civil), 4th ed., Vol. 1, Sec. 220, et seq.

**OBJECTION:**

7. **Special Damages:  Medical Bills and Lost Wages to Date**

In this case, there has been evidence that the medical expenses to date incurred by the plaintiff as a consequence of his injuries of February 7, 2000 total $_____.

Provided that you find that these expenses were incurred as a necessary consequence of the injuries sustained by the plaintiff, then you are to allow for and include them in your award as part of the damages in this case.

The wages from employment claimed to be lost by Robert Gagnon up until the time of the trial, according to the testimony, amount to $_____.

If you find this testimony as to lost wages to be credible, then you may award Robert Gagnon that sum of money, or such other sums, if any, that you find to have been established, as damages for lost wages.

Wright & Ankerman, Connecticut Jury Instructions (Civil), 4th ed., Vol. 1, Sec. 226.

**OBJECTION**:

8. **Future Medical Expenses**

In this case, the plaintiff claims that he will be required to incur hospital and medical in the future as a consequence of the injuries received on February 7, 2000.

Under our law, you are to award damages for future medical expenses - so-called future economic loss - if, from all the evidence, you find that it is reasonably probable that the plaintiff will incur such expenses.

In making such an award, you should determine from the evidence what a reasonable estimate would be of future medical expenses. This determination need not be made with certainty. In fact, under our law the determination of such expenses does not require the same degree of certainty as in the determination of past medical expenses, which are typically already well documented.

In determining this issue, you should keep in mind the pattern and cost of such expenses that have been incurred by plaintiff to date. Provided that you find that future expenses will more likely than not be incurred, you may use the history of costs incurred to date as a benchmark, or yardstick, from which to determine a reasonable estimate of such future expenses.

Manchetti v. Ramirez, 240 Conn. 49, 54-57 (1997);
Brennan v. Burger King Corp., 46 Conn. App. 76, 79-81 (1997), affirmed 244 Conn. 204 (1998);
Seymour v. Carcia, 221 Conn. 473, 477-481 (1992)

**OBJECTION:**

9. **Physical Pain and Suffering**

With respect to pain and suffering, you are to include in your award fair and just compensation for the physical pain and suffering which Mr. Gagnon sustained and suffered up until the date of trial and for the pain and suffering which you find he will sustain and suffer for the balance of his life as a consequence of the injuries received on February 7, 2000. In this regard, you should take into account the nature, extent and severity of the injuries that were sustained by Mr. Gagnon, the nature and extent of his convalescence, and the physical effects of all of these injuries and impairments both for the period up until the date of trial and for the rest of Mr. Gagnon's life expectancy, which has been agreed to be 21.9 years, statistically.

Gervais v. Foehrenbach, 149 Conn. 461, 464 (1962).

**OBJECTION:**

10. **Mental Suffering**

A person who has been injured by the wrongdoing of another is entitled to be
compensated for mental suffering caused thereby, as well as for the results which proximately
follow from it.  Mental suffering and anguish arising out of physical injury is compensable.
Hence, in this case, all of the mental suffering and anguish that the plaintiff has suffered to date,
and will suffer in the future, as a result of the incident of February 7, 2000 are proper elements of
damage for which he must be compensated.  Mental suffering is as proper an element of damage
as is physical suffering when it is accompanied by physical injury and when it is a natural and
proximate consequence of the physical injury.

Bushnell v. Bushnell, 103 Conn. 583 (1925);
Orlo v. Connecticut Co., 128 Conn. 231 (1941); and
Wright & Ankerman, Connecticut Jury Instructions (Civil), 4th ed., Vol. 1, Sec. 240.

**OBJECTION:**

11. **Damages for Increased Risk of Harmful Consequences**

In the complaint, the plaintiff, Robert Gagnon, has alleged that as a result of the injuries he sustained on February 7, 2000, he has an increased likelihood of future medical problems, complications, and/or disabilities.

Under our law, a plaintiff who has suffered a physical harm which has resulted in an increased risk of future harm -- such as additional medical problems, complications and disabilities -- is entitled to present monetary compensation to the extent that the future harm is likely to occur. In determining this issue you should consider all evidence which bears on the issue of whether as a result of the injuries sustained on February 7, 2000, the plaintiff has an increased risk or likelihood that in the future he will have medical problems, complications, disabilities and other harmful consequences of her condition. If so, your award of damages in this case should fairly, justly and reasonably compensation him for these increased risks or likelihood of future harmful consequences.

Petriello v. Kalman, 215 Conn. 377, 397-398;
Figlar v. Gordon, 133 Conn. 577.

**OBJECTION:**

12.  **Damages for Fear and Anxiety**
**Regarding Future Medical Problems**

Under Connecticut law, an individual caused harm due to the fault of another is entitled

to compensation for any anxiety or fear that he or she may have future medical problems,

disabilities or other harmful consequences of that physical condition so long as these fears and

this anxiety have a reasonable basis in fact.

Therefore, should you find that the plaintiff, Robert Gagnon, has any fear or anxiety

concerning future medical problems, and, if those fears and that anxiety have a reasonable basis,

then you should award him damages that will fairly, justly and reasonably compensate him in

that regard.

Petriello v. Kalman, 215 Conn. 377, 391-392 (1990);
Figlar v. Gordon, 133 Conn. 577 (1947).

**OBJECTION:**

13.  **Interference with Life's Activities**

In addition to the elements of damage previously outlined, you should also consider as an element of damage in this case that period of time for which Mr. Gagnon has been disabled from engaging in the ordinary activities, hobbies and recreations of life, and the period extending into the future which you find that he will be unable to do so as well.

Allen v. Giuliano, 144 Conn. 573 (1957).

**OBJECTION**:

### 14. **Permanent Injuries**

You must also consider, as a separate element of damage, an award to Mr. Gagnon for

the permanent injuries he sustained as a consequence of the accident of February 7, 2000.  If you

find that Mr. Gagnon has suffered permanent injuries as a consequence of this incident, then you

should include in your award compensation for such permanent injuries and their effects as you

find he sustained and suffered and will sustain and suffer in the future.  Mr. Gagnon is entitled to

be compensated for the injuries, impairments and disabilities and their effects for the period of

time between February 7, 2000 and this trial as well as over the period of his remaining life

expectancy.  Mr. Gagnon's remaining life expectancy has been agreed by counsel [or found by

the court] to be 21.9 years.

You should bear in mind that an award for permanent injuries is in addition to your award

of damages for any other proper element of damages in this case, including physical and mental

pain and suffering.

Wright & Ankerman, Connecticut Jury Instructions (Civil), 4th ed.,
Vol. 1, Sec. 226 and 233;  and Figlar v. Gordon, 133 Conn. 577 (1947).

**OBJECTION**:

## 15.  Amount of Award Must Fairly and Justly Compensate Robert Gagnon

In arriving at your award of damages in this case, you must consider each and every element of damages, which I have just outlined to you, which you find to have been caused by the incident of February 7, 2000, and the injuries received in such occurrence.  Your verdict must reflect a total award which fairly, justly and reasonably compensates Robert Gagnon for all of the damages and losses he has sustained and suffered to date, and all of the damages and losses which he will continue to suffer during the remainder of his life expectancy.

**OBJECTION:**

III. DEFENDANT'S ADDITIONAL PROPOSED INSTRUCTIONS AND PLAINTIFF'S OBJECTIONS THERETO:

### 1. Proximate Cause

The measure of liability is found by determining the consequences of a defendant's breach of duty, and the defendant is culpable only if its conduct proximately caused the plaintiffs' losses. To constitute such causal relation between defendant's breach of duty and plaintiffs' damage as will suffice to maintain an action in tort, the defendant's breach of duty must have been a substantial factor in producing the damage complained of.

Not every causal relation, however, is a substantial factor in producing the damage complained of. Causes traced clear to the end which become of trivial consequence, mere incidents of an operating cause, may be, in a sense, factors, under our law, but these are considered so insignificant that the law cannot fasten responsibility upon one whom may have set them in motion. These are not substantial factors. To be substantial factors, the causes must have continued down to the moment of damage, or, at least, down to the setting in motion of the final active injurious force which immediately produced the damage.

In this case, I instruct you that you are only concerned with the question of whether the defendant is liable to the plaintiffs in accordance with the definition of proximate cause, which I have just given you.

<u>Mahoney v. Beatman</u>, 110, Conn. 185, 188, 195, 147 A. 762 (1929).

**OBJECTION:**

### 2. **Product Liability**

The plaintiffs here claim that the defendant is liable for their injuries under an Act of the Connecticut General Assembly.

To meet their burden of proof under Connecticut law, the plaintiffs must prove that the M 250 crane was defective in one or more of the ways they claim. The users here are three employees of the Capco Company, including the plaintiff, Robert Gagnon.

In this case, there is no dispute that the defendant manufactured the crane and sold it to Shawmut Equipment Company, which in turn, sold it to Capco Steel Company. Your responsibility will be to determine by a preponderance of the evidence whether the crane contained the defects alleged and whether those defects were a proximate cause of the accident.

Connecticut General Statutes § 52-572m et seq.
2 Restatement (Second), Torts § 402A, comment 8.

**OBJECTION**:

### 3. **Proof of a Defective Product:  Unreasonably Dangerous**

.     a.     The law in this state does not transform manufacturers into insurers, nor does it impose absolute liability.  To prove that the crane was defective under Connecticut law in the way the plaintiffs here claim, the plaintiffs must prove by a fair preponderance of the evidence, as I have already explained that term to you, that the alleged defect rendered the M-250 crane unreasonably dangerous.  A product is unreasonably dangerous if, at the time of its sale, it is defective beyond the expectations of the persons likely to purchase it.

Potter v Pneumatic Tool Co., 241 Conn. 199, 210, 214-15, 694 A.2d 1319 (1997).

b.     In determining the expectations of a consumer of the M-250 crane, you should consider the crane's usefulness, the likelihood and severity of the danger posed by its design, the feasibility of an alternative design, the financial cost of an improved design, the ability to reduce the crane's danger without impairing its usefulness or making it too expensive, and the feasibility of spreading the loss by increasing the crane's price or by other means, and such other factors as the nature of the crane itself may indicate to you are appropriate.

Potter v Pneumatic Tool Co., 241 Conn. 199, 249-50, 694 A.2d 1319 (1997).

c.     Put another way, the M-250 crane is unreasonably dangerous only if you find that one or more alleged defect existed and that such defect made the crane more dangerous than it should have been giving consideration to all the factors that I have just outlined for you.

2 D. Wright & W. Ankerman, Connecticut Jury Instructions §511(t) (4th ed. 1993).

d.    In determining whether the crane is unreasonably dangerous you may consider whether Capco or its employees violated the regulations and standards of the Occupational Safety and Health Administration (OSHA) and the American National Standards Institute (ANSI) in so far as they relate to crane safety.  <u>Wendland v Ridgefield Construction Services, Inc.</u>, 184 Conn. 173 (1981).

e.    If after considering all these factors you find that the M-250 crane was unreasonably dangerous and that the alleged defect was a substantial factor in causing the plaintiffs' losses, then the plaintiffs have proven their claim under Connecticut law and you are to find for them and return a verdict in their favor.  If, however, you do not find that the M-250 crane was defective in the way claimed by the plaintiffs, or you do not find that any such defects were a substantial factor in causing the accident, then you are to return a verdict for the defendants.  <u>Potter v Pneumatic Tool Co.</u>, 241 Conn. 199, 694 A.2d 1319; <u>Gajewski v. Pavello</u>, 36 Conn. App. 601, 614, 652 A.2d 509 (1994), aff'd 236 Conn. 27, 670 A.2d 318 (1996).

**OBJECTION**:

**4.  <u>Sec. 52-572q.  Liability of Product Seller</u>**
**<u>Due to Lack of Adequate Warnings or Instructions</u>**


The plaintiffs also allege that the defendant gave either no warning or instructions or

inadequate warnings or instructions to the users.

Under Connecticut law, a product may, under certain circumstances, be defective if a

manufacturer or seller fails to warn of the product's unreasonably dangerous propensities.  Under

such circumstances, the failure to warn, by itself, constitutes a defect.


Connecticut General Statutes § 52-572q.
<u>Sharp v. Wyatt, Inc.</u>, 31 Conn. App. 824, 833, 627 A.2d 1347, aff'd, 230 Conn. 21, 664 A.2d
1347 (1993).

**OBJECTION:**

5. **Standard Re:  Warnings Section 52-572q.**

In determining whether defendant was required to supply instructions or warnings, or if

you find they did so provide, whether the warnings or instructions were adequate, you may

consider:  (1) The likelihood that the crane would cause the harm suffered by the plaintiffs; (2)

the defendant's ability to anticipate at the time the crane was manufactured that the expected

crane user, here the employees of Capco, Candelmo and Malz, would be aware of both the risk

and the nature of the potential harm of the crane; and (3) the techonological feasibility and cost

of supplying different warnings and instructions.

You should also consider whether the defendant's warning or instructions were devised

to communicate with the persons best able to take or recommend precautions against the

potential harm.  The defendant claims that it did so communicate by providing to the

purchaser/owner, Capco Steel Co., a construction company, these instructions and warnings.  In

this regard, you should consider the assembly instruction folios that were included in the owner's

manual.  You should also consider the other instructions and warnings contained in the owner's

manual, on the crane itself, on the Builder's Plate and on the decal in the operator's cab and on

other decal's on the crane and its control.  If you find that these instructions and warnings were

intended for the persons most able to understand the operations, then if you find such instructions

and warnings to be adequate, you should return a verdict for the defendant.

In this case, there is no dispute that the operators employed by Capco were the intended users of the crane. You should therefore consider whether those operators were possessed of knowledge and training sufficient to understand the instructions and warnings and to take precautions against the potential harm to which they referred.

Where, however, a manufacturer has reason to believe that the purchaser of the crane will recognize dangers associated with the assembly of the crane, no warnings are required. If the crane seller is aware of its purchaser's knowledge and sophistication with respect to the chart, it may choose not to issue warnings, and will not be liable for failing to do so.

Finally, I instruct you that Connecticut law does not impose a duty to warn of known or open and obvious dangers and, accordingly, there is no liability for failing to warn of open, obvious and known dangers. You may consider the nature of the crane and the regulations and standards of the Occupational Safety and Health Administration (OSHA) and the American National Standards Institute (ANSI).

Connecticut General Statutes § 52-572q (a-d).
Tomer v. American Home Products Corporation, 170 Conn. 681, 689, 368 A.2d 35 (1976);
Giglio v. Connecticut Light & Power Co., 180 Conn. 230, 235-236, 429 A.2d 486 (1980);
Ames v. Sears, Roebuck & Co., 8 Conn. App. 642, 645, 514 A.2d 353, cert. denied, 201 Conn.
    809, 515 A.2d 378 (1986);
2 Restatement (Second), Torts § 402A;
Sharp v. Wyatt, Inc., 31 Conn. App. 824, 839-40, 627 A.2d 1347 (1993);
Gajewski v. Pavelo, 36 Conn. App. 601, 615-17, 652 A.2d 509 (1994), aff'd, 236 Conn. 27, 670
A.2d 318 (1996).

**OBJECTION**:

### 6. Sophisticated User

The defendant claims that Capco and its employees, Mr. Candelmo and Mr. Malz, were what the law considers sophisticated users. A sophisticated user is a person who is aware of the product risk and the nature of the potential harm. If you find that the purchaser, Capco, or its employees, Mr. Candelmo and Mr. Malz, were sophisticated users, and that they ignored their knowledge and experience, you should return a verdict for the defendant because the proximate cause of the plaintiffs' injuries would not have been the dangerous aspect of the crane, but the failure of Capco or its employees to exercise their knowledge and experience with cranes.

Connecticut General Statutes § 52-572q.
Moran v. Eastern Equipment Sales, Inc., 76 Conn. App. 137, 147-49 (2003);
Sharp v. Wyatt, Inc., 31 Conn. App. 824, 839-40, 627 A.2d 1347 (1993); ("when the supplier has reason to believe that the purchaser of the product will recognize the dangers associated with the product, no warnings are mandated' "), aff'd, 230 Conn. 12, 644 A.2d 871 (1994).

**OBJECTION**: