## 7. <u>Causation Re: Warnings</u>

a. Even if you do find the warnings or instructions were inadequate, you must still determine whether the failure to give warnings was a proximate cause of the accident, as that term was previously defined, before you can find for the plaintiffs on this issue.

<u>Sharp v. Wyatt, Inc.</u>, 31 Conn. App., 824, 833, 627 A.2d 1347, aff'd, 230 Conn. 21, 664 A.2d 1347 (1993).

b. In determining whether the proximate cause of the accident was a failure to supply adequate warnings or instructions, the plaintiffs must prove by a fair preponderance of the evidence that if adequate warnings or instructions had been provided, there would have been no accident.

<u>Sharp v. Wyatt, Inc.</u>, 31 Conn. App. 824, 835, 838 n 13, 627 A.2d 1347, aff'd, 230 Conn. 21, 664 A.2d 1347 (1993).

c. You must also find that a different warning from that supplied would have prevented the plaintiffs injuries by alerting the operators in charge of the assembly of the crane at the time of the accident. Thus, to meet their burden of proof on warnings, the plaintiffs must show, by a fair preponderance of the evidence, (1) that the warnings provided were non-existent or inadequate and (2) that had the operators been differently warned of the risks, they would have treated the assembly of the crane differently and thereby avoided the alleged harm. Thus to meet their burden of proof on this claim, the plaintiffs must show that whatever warnings they

claim should have been supplied would have been heeded by the operators. In this regard, you may consider that the operators' failure to use and read the instructions and the warnings that were included in the Operator's Manual if you find that they did so fail to read or use the Operator's Manual.

Sharp v. Wyatt, Inc., 31 Conn. App. 824, 838 n 13, 627 A.2d 1347, aff'd, 230 Conn. 21, 664 A.2d 1347 (1993);
Shutte v. Celotex Corporation, 196 Mich. App. 135, 140, 492 N.W.2d 773 (1992) (proximate cause in failure to warn case requires showing that "an adequate warning would have prevented the plaintiffs' injury by altering the conduct involved").

    d.    If you find that the instructions and warnings were designed to communicate with persons assembling and using the crane best able to appreciate its contents and to take necessary precautions, then you must find that defendant has discharged its duty to warn and so return a verdict for the defendant on this issue.

Connecticut General Statutes §52-572q(d);
Sharp v. Wyatt, Inc., 31 Conn. App. 824, 838 n 13, 627 A.2d 1347, aff'd, 230 Conn. 21, 664 A. 2d 1347 (1993);
Shutte v. Celotex Corporation, 196 Mich. App. 135, 140, 492 N.W.2d 773 (1992) (proximate cause in failure to warn case requires showing that "an adequate warning would have prevented the plaintiff's injury by altering the conduct involved").

**OBJECTION**:

8. **Defenses to the Connecticut Products Liability Act**

Now, I must also instruct you that the defendant has asserted several affirmative defenses. Such defenses must be considered by you only if you first find that the Manitowoc crane is defective and that the defects allegedly contained within it were a substantial factor in bringing about the harm or injury to the plaintiffs alleged to have occurred in this case.

Similarly, to the plaintiffs' burden of proof on their allegations, ladies and gentlemen, the defendant bears the burden of proof on each of its affirmative defenses. It must meet this burden by a fair preponderance of the evidence, but if it does establish that defense your verdict must be for the defendant.

**OBJECTION:**

### 9. **Misuse**

The manufacturer of a product has the right to expect that users or consumers will read and follow instructions pertaining to the use thereof, and the failure to follow clear and unambiguous instructions or warnings is itself a misuse of the product which absolves the defendant of liability.

The defendant alleges that the operators (Mr. Candelmo and Mr. Malz) were not following the assembly instructions as prescribed in the Operator's Manual. Defendant claims that the Capco Steel Co. failed to use the boom butt handling cylinder to raise the boom and permitted workers including the plaintiff, Robert Gagnon, to go onto the flat bed truck and under the raised, but unsupported boom butt. If you find that the Capco operators did fail as to any one or more of these elements and such failure was a cause of the accident, then this would constitute what the law calls misuse, which would be unauthorized. If you find that the operators misused the crane, you must return a verdict for the defendant against both plaintiffs. Under our law, a defendant is not liable for any harm that occurred if its product was either misused or was not used in the manner intended by its maker.

Thus, if you find that the operators were not assembling the crane in the manner intended, or reasonably anticipated or consented to by the defendant, then such misuse would be unauthorized and you must return a verdict for the defendants.

Connecticut General Statutes § 52-5721.
Elliot v. Sears Roebuck & Co., 229 Conn. 500, 642 A. 2d 709 (1994);
Johnson v. Niagara Mich. & Tool Works, 666 F. 2d 1223, 1225 (8th Cir. 1981)
    (adequacy of warning necessarily presupposes that operator read warning);
Peters v. Judd Drugs, Inc., 602 N.E. 2d 162, 165 (Ind. App. 1992); (no recovery for inadequate
    warning where nurse applied potassium hydroxide internally without regard for label);
Peterson v. Parke Davis & Co., 705 P. 2d 1001, 1003 (Colo. App. 1985) (adequacy of warnings
    and instructions not relevant where physician disregards them);
Erikson v. Monarch Industries, Inc., 347 N.W. 2d 99, 109 (Neb. 1984) (failure to follow plain
    and unambiguous wiring instruction s is misuse of product; not reasonably foreseeable
    that expert consumer would fail to follow plain and unambiguous directions);
McCleskey v. Olin Matheison, Chemical Corp., 193 S. E. 2d 16, 18 (Ga. App. 1972)
    (insufficiency of labeling could not be proximate cause of fire when employee failed to
    read label);
63 Am. Jur. 2d, Products Liability § 1247.

**OBJECTION**:

10. **Connecticut General Statute Sec. 52-572p:  Alteration**

The plaintiffs must also prove that the feature or condition that is claimed to be a defect or to make the crane defective, existed at the time that it left the defendant, and that the crane was expected to reach the user without substantial change in condition as to the feature claimed to be a defect, and that the product in fact reached the ultimate user without substantial modification.

A manufacturer product seller is not liable if another person such as Capco Steel Co., or its employees, Mr. Malz or Mr. Candelmo altered the product in a way that created a defect, unless the manufacturer expected or reasonably should have expected such an alteration to occur. An alteration that does not substantially change the product with regard to the feature that is proven to be defective does not, however, remove the manufacturer's liability for the defect. On the other hand, an alteration may include a change in use.

The defendant has alleged that the product was modified or altered, and that the modification or alteration resulted in the defect claimed. Specifically, the defendant claims that the product was modified as a result of the Capco employees not assembling the crane as instructed in the Operator's Manual. You must determine whether the Capco employees followed the assembly instructions. If you determine that they did not, then this would constitute an alteration of the crane. If you do determine that there was an alteration of the crane, and if the alteration or modification was the sole proximate cause of the harm to the plaintiffs, then the

defendant is not liable. For the defendant to be liable, the plaintiffs must prove that the harm would have occurred notwithstanding the alteration or modification. In other words, the plaintiffs must prove that the harm would have occurred notwithstanding the failure to follow the instructions.

If there was a defect that was not caused by modification or alteration of the product, and if that defect was a substantial factor in causing the harm, then the manufacturer is liable even if modification or alteration also proximately caused the harm.

If you find that the product was modified or altered, and that the modification or alteration was the sole proximate cause of the injury to the plaintiffs, the plaintiff may still recover if they prove that the alteration or modification was made with the product seller's consent or was the result of conduct that the product seller reasonably should have anticipated.

Connecticut General Statutes § 52-572p;
<u>Potter v. Chicago Pneumatic Tool Co.</u>, 241 Conn. 199, 229-42 (1997);
<u>Elliot v. Sears, Roebuck & Co.</u>, 229 Conn. 500, 642 A.2d 709 (1994)

**OBJECTION:**

## 11. **Product Liability:  Comparative Responsibility (Causation)**

The defendant claims that the injuries and losses of which the plaintiffs complain were not caused by any defect in the crane.  The defendant claims that the plaintiff himself was at fault for his own injuries.

If you find that the plaintiffs have proved that a defect in the crane was a substantial factor in causing their losses and that only the defect in the crane caused their losses, your verdict should be in favor of the plaintiffs.  If you find that the plaintiffs have not proved that the defects in the crane were a substantial factor in causing their losses, then you would find in favor of the defendant.

If you find that the defendant is liable under Connecticut law, but that the plaintiff, Robert Gagnon, was also responsible by going under and working under the unsupported boom butt and that his conduct was a substantial factor in causing the losses suffered, then you must determine the percentage to which each party contributed to causing the plaintiff's losses.

For example, if you find that a defect in the crane was a proximate cause of the accident, and that the defect contributed 50% to causing the accident, and the acts and omission of the plaintiff, Robert Gagnon, contributed 50% to causing the accident, then the defendant would be liable for 50%.

Connecticut General Statute § 52-572o;
<u>Elliot v. Sears Roebuck & Co.</u>, 229 Conn. 500, 642 A.2d 709 (1994);
<u>Champagne v. Raybestos-Manhattan, Inc.</u>, 212 Conn. 509, 542-43, 562 A.2d 1100 (1989);
<u>Malerba v. Cessna Aircraft Co.</u>, 210 Conn. 189, 554 A.2d 287 (1989)

**OBJECTION**:

### 12. Expert Witnesses

You have heard testimony of several witnesses who have been called by both sides to give their opinions about the cause or causes of the accident. These witnesses testified in order to assist you in reaching a decision in the case.

The testimony of Mr. Burkhart, called by plaintiffs, conflicts with the testimony of others such as Mr. Lanning, Mr. Lund and Mr. Caulfield. You must remember that you are the sole trier of the facts and their testimony relates to a question or questions of fact – that is the sufficiency of the assembly instructions and the warnings and the cause or causes of the accident. So, it is your job to resolve the disagreement.

The way you resolve the conflict between these witnesses is the same way you decide other fact questions and the same way you decide whether to believe ordinary witnesses. In addition, since they gave their opinions, you should consider the soundness of each opinion, the reasons and bases for their opinions and the witness' motives, if any, for testifying.

You may give the testimony of each of these witnesses such weight, if any, that you think it deserves, in light of all the evidence. You should not permit a witness' opinion to be a substitute for your own reason, judgment and common sense.

You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or unsupported by the other evidence in

the case, or, if you, for other reasons, do not believe the witness. The determination of the facts in this case rests solely with you.

The same rule applies with respect to opinion testimony from the investigating police officer, Detective William Lewis and the State Crane Inspector Elliott Henowitz.

Adapted from Fed. Jury Insts., Inst. 76-10.

**OBJECTION**:

### 13. **Damages**

In a personal injury action, there are two general types of damages with which you must be concerned: economic damages and noneconomic damages. Economic damages are monies awarded as compensation for monetary losses and expenses which the plaintiff has incurred, or is reasonably likely to incur in the future, as a result of the defendant's fault. In this case, the plaintiff has made a claim for present and future cost of reasonable and necessary medical care and lost earnings. Noneconomic damages are monies awarded as compensation for non-monetary losses and injuries which the plaintiff has suffered, or is reasonably likely to suffer in the future, as a result of the defendant's negligence. In this case, the plaintiff has made a claim for physical pain and suffering, mental and emotional pain and suffering, and loss of diminution of the ability to enjoy life's pleasures.

Adapted from Wright & Ankerman, <u>Connecticut Jury Instructions</u> (Civil), § 226 (v) (4th ed. supp. 2001).

**OBJECTION**:

### Supplemental Charge as to Damages

As I explained, the plaintiff has made a claim in this case that in the future he may incur what I have described to you as economic damages. He has the burden of proving that he will incur such expenses in the future. In addition, in assessing fair compensation, you should adjust to present value any award you may make for economic damages such as future medical or hospital expenses. If you should make any such award for economic damages under the rule I have already explained to you, you must adjust the amount of any such future loss, as best as you can, to present or discounted value. In so doing, you must take into account not only the future course of interest rates, but also the future course of the rates of inflation and rates of growth in wages or increases in costs. This is because any allowance you make in the nature of monetary damages for future economic damages is substantially a present payment which the plaintiff would receive today, whereas it is in compensation for something which would occur only from time to time through the years in the future. In other words, any award at this time could be immediately put at interest, whereas any future element of damage so compensated would not, in fact, have occurred now, but only from time to time in the future. In the absence of expert testimony to establish another rate of

discount, courts in Connecticut approve the use of a 2% discount rate. That means that you should discount or reduce the present value using the 2% per year formula any award for future economic damages.

Ammar v. U.S., 342 F.3d 133, 147-49 (2nd Cir. 2003);
Ramierz v. New York City Off-Track Betting Corp., 112 F.3d 38, 41 (2nd Cir. N.Y. 1997);
Adapted from Hollywood v. Combustion Engineering, Civil Action No. B-80-458 (D.Conn. 1983) (Eginton, J.);
1 Wright, Connecticut Jury Instructions, § 244e (4th ed. 1993);
Oliveri v. Delta Steamship Lines, Inc., 849 F. 2d 742, 748-749 (2d. Cir. 1988);
DeChico v. Metro North Commuter, R.R., 758 F.2d 856, 860 (2d Cir. 1985);
Doca v. Marina Mercante Nicaraguense, S.A., 634 F.2d 30, 39-40 (2d Cir. 1980);
Feldman v. Allegheny Airlines, Inc., 382 F. Supp. 1271 (D. Conn. 1974), aff'd. 524 F .2d 384, 387-388 (2d. Cir. 1975);
Jackewicz v. United Illuminating Co., 106 Conn. 310, 314 (1927);
Chase v. Fitzgerald, 132 Conn. 461, 469-470 (1946).

**OBJECTION:**

## Supplemental Charge as to Damages

The plaintiff has also made a claim in this case that in the future he may incur what I have described to you as non-economic damages. Similarly as with the case of economic damages, in assessing fair compensation, you should adjust to present value any award you may make for non-economic damages such as future pain and suffering. If you should make any such award for non-economic damages under the rules I have already explained to you, you must adjust the amount of any such future loss, as best as you can, to present or discounted value. In so doing, you must take into account not only the future course of interest rates, but also the future course of the rates of inflation and rates of growth in wages or increases in costs. This is because any allowance you make in the nature of monetary damages for future non-economic damages such as pain and suffering damages is substantially a present payment which the plaintiff would receive today, whereas it is in compensation for something which would occur only from time to time through the years in the future. In other words, any award at this time could be immediately put an interest, whereas, any future element of damage so compensated would not, in fact, have occurred now, but only from time to time in the future. Unlike the case of economic damages, however, this Court will not prescribe for you any specific discount or interest rate to be used. It is for you the jury to take into account the time value of money and make a reasonable reduction in the amount of the award you may make for non-economic

damages to reflect the plaintiff's opportunity to invest any such award while also bearing in mind that any such reduction may be tempered by the future course of inflation.

Ammar v. U.S., 342 F.3d 133, 147-49 (2nd Cir. 2003);
Ramierz v. New York City Off-Track Betting Corp., 112 F.3d 38, 41 (2nd Cir. N.Y. 1997);
Adapted from Hollywood v. Combustion Engineering, Civil Action No. B-80-458 (D.Conn. 1983) (Eginton, J.);
1 Wright, Connecticut Jury Instructions, § 244e (4th ed. 1993);
Oliveri v. Delta Steamship Lines, Inc., 849 F. 2d 742, 748-749 (2d. Cir. 1988);
DeChico v. Metro North Commuter, R.R., 758 F.2d 856, 860 (2d Cir. 1985);
Doca v. Marina Mercante Nicaraguense, S.A., 634 F.2d 30, 39-40 (2d Cir. 1980);
Feldman v. Allegheny Airlines, Inc., 382 F. Supp. 1271 (D. Conn. 1974), aff'd. 524 F .2d 384, 387-388 (2d. Cir. 1975);
Jackewicz v. United Illuminating Co., 106 Conn. 310, 314 (1927);
Chase v. Fitzgerald, 132 Conn. 461, 469-470 (1946).

**OBJECTION**:

Respectfully submitted this 19th day of November, 2003.

**Plaintiffs Robert Gagnon and June Gagnon**

By /s/ _____
Gerald S. Sack
Sack, Spector & Karsten
836 Farmington Avenue
West Hartford, CT 06119
(860) 233-8251
Federal Bar #ct05279

**Defendant The Manitowoc Company:**

By _____
Robert G. Oliver, Esq.
Mulvey, Oliver & Gould
83 Trumbull Street
New Haven, CT 06511
Federal Bar #CT00192

**Intervening Plaintiff:**

By /s/ _____
Attorney Nancy S. Rosenbaum
Attorney Mary A. Minor    ph
Law Offices of Nancy S. Rosenbaum
655 Winding Brook Drive
Glastonbury, CT 06033
Federal Bar #CT14444

H:\WP\GSS\PLAINTIF\gagnon-k\trial\TMO2(wdefchanges).doc  31

SACK, SPECTOR AND KARSTEN, LLP • ATTORNEYS AT LAW
836 FARMINGTON AVE., SUITE 221•WEST HARTFORD, CT 06119-1544•(860) 233-8251•JURIS NO. 52776

** TOTAL PAGE.02 **

Respectfully submitted this ____ day of November, 2003.

                              **Plaintiffs Robert Gagnon and June Gagnon**

                              By_____
                                  Gerald S. Sack
                                  Sack, Spector & Karsten
                                  836 Farmington Avenue
                                  West Hartford, CT  06119
                                  (860) 233-8251
                                  Federal Bar #ct05279

**Defendant The Manitowoc Company:**

By _/s/ Robert G. Oliver_____
         Robert G. Oliver, Esq.
         Mulvey, Oliver & Gould
         83 Trumbull Street
         New Haven, CT  06511
         (203) 624-5111
         Federal Bar #CT00192

**Intervening Plaintiff:**

By_____
         Attorney Nancy S. Rosenbaum
         Attorney Mary A. Minor
         Law Offices of Nancy S. Rosenbaum
         655 Winding Brook Drive
         Glastonbury, CT 06033
         (860)633-9471
         Federal Bar #CT14444